UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PROGRESSIVE PALOVERDE INSURANCE CO. | * * * | CIVIL ACTION NO. 19-12840 C/W 19-13010, 19-13011, 19-13082, 20-392 |
| VERSUS | * * | SECTION: "J"(1) |
| ESTATE OF BOBBY J. JENKINS, ET AL. | * * * | JUDGE CARL J. BARBIER |
| *REF*. *Civ. A. No. 19-13082* | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   \*

ORDER AND REASONS

Before the Court is the Motion to Propound Additional Interrogatories filed by plaintiff Progressive Paloverde Insurance Company ("Progressive").[1] (Rec. Doc. 74). For the following reasons, the Motion is GRANTED in part and DENIED in part.

Background

These consolidated lawsuits arise out of a collision between an Amtrak train and a dump truck that occurred on or about October 10, 2018 at a railroad crossing in Tangipahoa Parish. Bobby Jenkins, the driver of the dump truck, perished from injuries sustained in the crash. Numerous related lawsuits were filed and consolidated. Trial is presently set to begin on February 22, 2021. The deadline to complete discovery is December 28, 2020.

Of relevance to the present motion, Mr. Jenkins was in the process of hauling sand or similar material from a private pit at the time of the incident. According to Progressive, it has reason to believe that the pit was operated by defendant Industrial Aggregates of the Florida Parishes, L.L.C. ("Industrial Aggregates"). According to Progressive, defendant Heck Industries, Inc. ("Heck"), is a customer of Industrial Aggregates and in the months leading up to the collision,

---

[1] Although originally filed as an *ex parte* motion, defendant Heck Industries, Inc., reported that it opposes the Motion. Accordingly, the Motion was set for submission on June 3, 2020 and briefing schedule was set.

1

Mr. Jenkins would often retrieve loads from Industrial Aggregates for delivery at one of Heck's plants.

Heck insists that Mr. Jenkins was an independent contractor and not its agent or employee. It further takes the position that Mr. Jenkins was not hauling one of Heck's loads at the time of the collision. Apparently, however, Heck concedes that Mr. Jenkins hauled as many as three loads of gravel or sand from Industrial Aggregates to Heck earlier that day. No party has identified with certainty the customer for whom Mr. Jenkins was hauling at the time of the collision. Progressive submits that this is a critical issue because it will bear on liability and coverage under numerous insurance policies.

Industrial Aggregates has represented that it destroys all records after thirty days and has no idea what Mr. Jenkins was hauling or where he was taking it. According to Mr. Jenkins' widow, any business records were kept in the cab of his truck, which was decimated in the accident. Progressive is seeking to determine whether Heck was the customer to which Mr. Jenkins was hauling through discovery requests to Heck. These requests seek "load tickets" produced by Heck and/or Industrial Aggregates that contain information about each order filled by Industrial Aggregates. According to counsel for Industrial Aggregates, the load tickets are written at the time a truck is loaded at the pit on a triplicate pad, Industrial Aggregates keeps a copy, and the driver takes two copies, one for himself and one to present to the customer upon delivery. Heck's initial disclosures to Progressive included three load tickets from the date of the accident showing Mr. Jenkins as the carrier. According to Progressive, Industrial Aggregates' initial disclosures included nine load tickets with Heck as the customer. Three are the same as those produced by Heck, but according to Progressive, Industrial Aggregates produced one additional load ticket from October 10, 2018, with Mr. Jenkins as the carrier with a time stamp of 1:21 p.m., shortly before the accident

(approximately 1:45 p.m.).[2] Another four load tickets from October 10, 2018, have an "illegible" carrier, and the last one is dated October 11, 2018, and lists "Hill" as the carrier. Industrial Aggregates informed Progressive that although it did not retain any load tickets beyond thirty days, it was in possession of load tickets from Heck's initial disclosures.

Presently at issue are Progressive's First Set of Interrogatories and Requests for Production to Heck . There are twenty numbered Interrogatories, and some contain subparts. Heck's responses stopped halfway through interrogatory 9 at which point Heck began responding with the objection that Progressive had served more than 25 interrogatories. Heck also responded to Request for Production 13 (seeking a privilege log) and Request for Production 14 (requesting an executed affidavit verifying Heck's interrogatory responses) on the grounds that these requests amounted to interrogatories in excess of 25.

Progressive filed the present Motion for Leave to File Excess Interrogatories.[3] It argues that excess interrogatories are warranted here because they are within the scope of permissible discovery and are narrowly tailored to the needs of the case. It insists that given the complexity of the legal issues, the variety of legal claims, and the lack of freely available information regarding the relevant facts, the excess interrogatories are not disproportionate with the needs of the case.

Heck opposes. It submits that Progressive has served in excess of 100 interrogatories and that it failed to *first* request leave of court as instructed by Local Rule 33.1. By its count, it has already answered 55 of those interrogatories. Heck submits that Interrogatory No. 9 asks for nine pieces of information about each of 10 load tickets and should be counted as ninety interrogatories on its own. Heck takes the position that the only relevant load ticket is No. 14068 or 14069. It appears that Heck has identified these as the possible tickets that would reflect Mr. Jenkins' last

---

[2] According to Heck, this load ticket was signed by T. Carter, not Mr. Jenkins.
[3] Progressive notes that it responded without a numerosity objection to Heck's interrogatories in excess of 25.

load because ticket 14067 notes a time of 1:21 p.m. on October 10, 2018, and ticket 14070 is dated October 11, 2018, at 6:55 a.m.[4] Heck points out that neither of these load tickets were identified by Progressive in Interrogatory No. 9. It adds that it has answered Progressive's questions about the first four load tickets, three of which identified Mr. Jenkins as the carrier (by the identifier "B94"). As to the remaining six load tickets referenced in Interrogatory No. 9, Heck argues that these plainly identify drivers other than B94 and could, therefore, not be the load Mr. Jenkins was hauling at the time of the accident. Heck argues that Interrogatories 10 through 19 each contain multiple subparts and should be counted as thirty-two separate questions. It concedes that Interrogatory No. 20 is a single question. Heck insists that Progressive has not established good cause for additional interrogatories. It argues that Progressive has not shown the relevance of the remaining six load tickets referenced in Interrogatory No. 9. It argues that Progressive has not demonstrated the relevance of the information sought by Interrogatories 10-20 either.

In reply, Progressive submits that the relevance objections mounted by Heck are not appropriate for the court to consider at this time. It argues that it must merely show a particularized need for the additional interrogatories, and it insists that it can do so. It submits that there is no need to go down a rabbit hole of determining exactly how many interrogatories were included in the Interrogatories numbered 1 through 20. Progressive points out that this case involves a substantial amount of money, half a dozen complex insurance policies, multiple claims for defense and indemnity, and statutory "bad faith" claims among others. Progressive insists that Interrogatories 9, 13, 14, 15, 16, 17, and 19 all concern the basic facts of the case. The lack of available evidence, Progressive says, has made the interrogatories necessary to uncover relevant and material information. Progressive argues that Interrogatories 10, 11, 12, and 14 are relevant to

---

[4] As noted above, the accident occurred around 1:45 p.m. on October 10, 2018.

4

Progressive's defense of Heck's claims against it. And Progressive argues that Interrogatories 18, 19, and 20 are evidence preservation interrogatories that could help it discover relevant yet previously unproduced documents.

Law and Analysis

1. *Privilege Log*

When documents are withheld as privileged or protected as trial-preparation materials, Federal Rule of Civil Procedure 26(b)(4)(A) requires that the party invoking the privilege "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Accordingly, Heck's obligation to produce a privilege log is automatic. Progressive was not required to request one, but that fact that it did does not make that request an interrogatory.[5] Heck shall produce a privilege log for any documents withheld as privileged within 7 days.

2. *Verification of Interrogatory Responses*[6]

The Federal Rules of Civil Procedure require that interrogatories must be answered "(A) by the party to whom they are directed; or (B) if that party is a public or private corporation . . . by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1). Further, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Progressive was not required to request that Heck verify its discovery responses, but the fact that it did so with reference to a particular form of verification does not convert the Request for Production into an interrogatory. Heck shall verify its interrogatory responses in accordance with Rules 33(b)(1) and (b)(3).

---

[5] Heck has not addressed Progressive's demand for a privilege log in its opposition memorandum.
[6] Heck has not addressed Progressive's request for a verification in its opposition memorandum.

3. *Number of Interrogatories*

Rule 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." The comments to Rule 33(a)(1) explain that

> Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Fed. R. Civ. P. 33 advisory committee comments to the 1993 amendment. In determining whether subparts should be considered separate interrogatories, courts consider "whether the interrogatory subparts are 'logically or factually subsumed within and necessarily related to the primary [interrogatory] question.'" Estate of Manship v. United States, 232 F.R.D. 552, 554 (M.D. La. 2005) (quoting Dang v. Cross, No. CV 00 13001 GAF(RZX), 2002 WL 432197, at *3 (C.D. Cal. Mar. 18, 2002)) (alteration in original). Thus, the Court must decide "whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question." Id. "If the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not 'factually subsumed within and necessarily related to the primary question." Id. (quoting Krawczyk v. City of Dallas, No. CIV.A. 3:03-CV-0584D, 2004 WL 614842, at *2 (N.D. Tex. Feb. 27, 2004).

Where a party seeks leave to serve more than 25 interrogatories, leave "may be granted to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 33(a)(1); Manship, 232 F.R.D. at 559. Rule 26(b)(1) provides that "parties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. Proc. 26(b)(1). Rule 26(b)(2) instructs that discovery should be limited when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(c). "The numerical limit on interrogatories is intended to protect against potentially excessive use of interrogatories, not to prevent necessary discovery." Lower River Marine, Inc. v. USL-497 Barge, No. CIV.A. 06-04083, 2007 WL 4590095, at *2 (E.D. La. Dec. 21, 2007). Thus, the determination often turns on whether "the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party." Manship, 232 F.R.D. at 559.

Although Progressive asks the Court to focus only on whether it has demonstrated a need for additional interrogatories, the Court finds it appropriate to consider the actual number of interrogatories to put Progressive's request in context. As discussed below, although the court finds that each of the first eight interrogatories count as one interrogatory, Interrogatory 9 must be construed as up to 90 interrogatories.  However, for reasons discussed below, the court declines to count specifically because no matter how they are counted or combined, they are well over the 25 automatically allowed. Accordingly, beginning at Interrogatory 9, the court considers whether Progressive has shown that the Interrogatory seeks information that is relevant and proportional to the needs of the case, not duplicative or cumulative, and not a request resulting from Progressive's lack of diligence.

- Interrogatory 1 requests the mailing address, principal place of business, and physical address of each location where Heck conducts business or operates a plant. The court construes this as one interrogatory.

- Interrogatory 2 asks Heck to identify all independent contractors retained in 2018 for the purpose of hauling cargo or materials. The court construes this as one interrogatory.

- Interrogatory 3 asks Heck to identify by start time, end time, start location, and end location, every load Jenkins hauled for Heck over the past ten years. The court construes this as one interrogatory.

- Interrogatory 4 asks Heck to state the amount of money paid to Jenkins over the past ten years. The court construes this as one interrogatory.

- Interrogatory 5 asks Heck to identify every document in its possession that relates to work Jenkins performed over the last ten years. The court construes this as one interrogatory.

- Interrogatory 6 asks Heck to describe its methods and policies for document retention. The court construes this as one interrogatory.

- Interrogatory 7 asks Heck to describe the manner in which it orders materials from the pit, specifying who places the order, when and how a driver is secured, when and how it is invoiced, when and how payments are made for the materials, when and how the driver is paid, and the physical address and place where materials are received. The court construes this as one interrogatory because the subparts following the request to "describe the manner in which you order materials from the pit" are subsumed within the initial request.

- Interrogatory 8 asks Heck to describe the processes and procedures in place for dispatching drivers to the pit, including its method of contacting drivers and the name of the individuals responsible for such dispatches. The court construes this as one interrogatory because the subparts following the request to "describe the processes and procedures in place for dispatching drivers to the pit" are subsumed within the initial request.
- Interrogatory 9 lists ten load tickets by number, and as to each load ticket, asks for the following nine subsets of information.
    (a) the name, address, phone number, and email address of the driver who retrieved the load from the pit
    (b) the time, date, and manner in which Heck was invoiced for the commodity described in the load ticket.
    (c) the time, date, and manner in which Heck paid for the commodity described in the ticket
    (d) the time, date, and manner in which Heck received the commodity described in the load ticket
    (e) the time, date, and manner in which Heck paid the driver or carrier for the delivery
    (f) the name, address, phone number, and email address of every individual or entity that has been in possession of the load ticket (to Heck's knowledge).
    (g) the name, address, phone number, and email address of every individual or entity that Heck has provided a copy of the load ticket
    (h) the time, date, and manner in which such copies were provided

>> (i) a description of any and all documents or electronically stored information that relates to the load ticket in any way.

Although some of these could be logically combined into one interrogatory, many subparts could not. The court notes that no matter how counted, Progressive will be well over the number automatically allowed, and thus declines to combine and count. The issue remaining is whether Progressive has shown that the excess interrogatories seek information that is relevant and proportional to the needs of the case, not duplicative or cumulative, and not a request resulting from Progressive's lack of diligence. Heck has answered the nine subparts for the first four load tickets, or 36 interrogatories. As to the remaining six load tickets, Progressive says that information about these load tickets is relevant because it will help identify fact witnesses. Progressive is particularly interested in load ticket 14067, which is time stamped at 1:21 p.m. on the date of the accident. It believes this is the ticket for Mr. Jenkins' last load and it is unwilling to accept Heck's theory that tickets 14068 and 14069 (which no longer appear to exist) would reflect Mr. Jenkins' last load. Progressive points out that Industrial Aggregates has explained in its discovery responses that sometimes employees or drivers discard tickets in the normal course of business if they transcribe information incorrectly and start again on the next-numbered ticket. Progressive also suggests the information it requests may show who else Mr. Jenkins regularly hauled for. It points out that the meaning of the different fields on the ticket may be obvious to Heck, but they are not clear to a person who is unfamiliar with them. It submits that because the tickets are Heck's own records, Heck will incur little to no burden in responding.

Heck argues that the remaining load tickets are irrelevant because they identify a driver other than Mr. Jenkins. It points out that two are dated the day after the accident. It notes that the only reason all of these tickets were produced to Heck was to narrow down the load ticket numbers to determine the likely load ticket number assigned to Mr. Jenkins' last load. Heck claims that researching its records to respond to these requests would be burdensome, though it does not offer any further detail.

The court finds that as to each of these tickets, Progressive's request that Heck identify the driver is relevant. Although Heck takes the position that Mr. Jenkins is not the driver for any of these tickets, the drivers are identified by code and some of their signatures are illegible. Accordingly, a verified response identifying another driver remains relevant because it will confirm that this is Heck's understanding after its diligent investigation. As to the remaining information about how Heck was invoiced, how it paid, how it received the commodity, and identifying who has ever possessed a copy of the ticket, the court does not see any relevance of this information to the issues in this lawsuit. This information will not identify other companies or individuals Mr. Jenkins worked for as Progressive suggests—indeed, all the tickets show Heck as the customer. It is unclear how such information will identify witnesses as Progressive claims.

- Interrogatory 10 asks whether any Heck employees or independent contractors have been involved in an accident while engaging in activities related to Heck's business, and then asks basic identifying information about the accident (the date, the employee or contractor involved, whether the claim was submitted to an insurance

11

company and if so, the claim number). These requests seek information about Heck's previous handling of insurance claims in other accidents, which may be relevant to the insurance issues presented by this lawsuit. Accordingly, the court will require Heck to respond. The court notes that the request is unbound by any time restriction, which may result in the burden of responding as to time periods distant from the date of the accident outweighing the importance of such information. However, Heck has not explained with any detail what burden is associated with responding to this request. It is not precluded from making any appropriate objections in its response.

- Interrogatory 11 asks Heck to describe its first notice of the accident including the time, manner, and identity of the notifying and notified individual. Neither party has addressed the relevance of this request or the burden of production with any specificity. However, given the concerns that original load tickets may be missing, the court finds this request for information about when Heck was notified of the accident (at which time its duty to preserve documents may have arisen) relevant and proportional to the needs of the case. Heck will be required to answer Interrogatory 11.

- Interrogatory 12 asks Heck to identify all information provided to Progressive in connection with its investigation of the accident, including a description of the content of the document and the date and manner that it was provided to Progressive. Progressive argues that because Heck "suggests it submitted *some* documents to Progressive in support of its claim for coverage," it is entitled to know what those documents are. (Rec. Doc. 82, at 7, emphasis in original). As written,

this request seems duplicative. It asks Heck to identify all information provided to Progressive in connection with its investigation of the accident. It is unclear why Progressive would not have equal access to such information. The court will not require Heck to respond to Interrogatory 12.

- Interrogatory 13 asks whether Heck is aware of Mr. Jenkins performing hauling services for any entities or individuals besides Heck in the past 10 years and, if so, to identify such entities or individuals. The court finds this request relevant and proportional to the needs of the case: Heck takes the position that Mr. Jenkins was not hauling for Heck at the time of the accident; if Heck is aware that Mr. Jenkins was hauling for others, Progressive is entitled to this information.

- Interrogatory 14 asks whether Heck filed an insurance claim related to the accident at issue in this case and if so, the claim number, the policy number, the name of the insurance company, the date the claim was opened, the name of the individual who reported the claim to the insurance company, and whether the claim has been denied or paid. Although neither party has specifically addressed why this request is relevant or why complying with it would pose an undue burden, the court finds that because of the insurance coverage issues in this case, the request is relevant and it appears to be proportional to the needs of the case. Heck will be required to answer it.

- Interrogatory 15 asks Heck to identify by full name, address, email address, and telephone number, every individual with discoverable information related to (1) the accident, (2) the nature of the work being performed by Mr. Jenkins for Heck on the date of the accident, (3) the nature of the work being performed by Mr. Jenkins

prior to the day of the accident, (4) the ownership of the pit and the property on which it sits, (5) Heck's claim for defense and indemnity from Progressive, and (6) communications with Mr. Jenkins and Progressive regarding Mr. Jenkins' Progressive policy, if any. No party has addressed the relevance or proportionality of this request with specificity. The court finds the requests are relevant as they are likely to lead to the identification of deponents that could shed light on the issues in this case.

- Interrogatory 16 asks Heck to identify by name, address, email address, and telephone number every individual it may notice for deposition, subpoena records from, seek an affidavit from, or call to testify at trial in this matter. Although no party has addressed this request with specificity, it appears duplicative of the list of individuals Heck was required to disclose in its initial disclosures and will be required to disclose on its witness list, as well as the individuals listed in Interrogatory 15. Moreover, at this stage of discovery, the court finds the request premature and that the burden of responding outweighs the likely benefit. Heck will not be required to respond.

- Interrogatory 17 asks Heck to identify by description, location, and name of custodian, every document or piece of electronically stored information that may contain discoverable information relating to: (1) the accident, (2) the nature of the work being performed by Mr. Jenkins for Heck on the date of the accident, (3) the nature of the work being performed by Mr. Jenkins prior to the day of the accident, (4) the ownership of the pit and the property on which it sits, (5) Heck's claim for defense and indemnity from Progressive, and (6) communications with Mr. Jenkins

14

and Progressive regarding Mr. Jenkins' Progressive policy, if any. The court finds this request to be duplicative of Progressive's Request for Production of Document 8, which asks for production of the same categories of documents. Heck will not be required to identify documents in addition to producing them.

- Interrogatory 18 asks Heck to identify by description, location, and name of custodian, every document it may attach to any motion or pleading or introduce as any exhibit in any suit arising out of the accident. No party has addressed this request with specificity beyond Progressive' suggestion that this request may uncover information that Heck should have produced but did not. The court finds this request duplicative of the documents Heck was required to disclose in its initial disclosures and will be required to disclose in its exhibit list. Moreover, at this stage of discovery, the court finds the request premature and that the burden of responding outweighs the likely benefit. Heck will not be required to respond.

- Interrogatory 19 asks Heck to list the name, phone number, residential address, mailing address, and job title of every individual involved in its record keeping, accounting, human resources, compliance, and dispatch operations for the period of October 1, 2018 through the present. Progressive has not explained the relevance of this request with any specificity; nor has Heck addressed the specific burden associated with production of this information. Because it is unclear why *all* of the listed individuals would be relevant to this case, the court will not require Heck to respond.

- Interrogatory 20 asks Heck to explain why it failed to produce load ticket No. 14067 (dated on the day of the accident shortly before the accident), which Industrial

Aggregates claims to have produced to Heck. The court finds this interrogatory relevant and proportional to the needs of the case because, although Heck has suggested the reason in its opposition memorandum (Rec. Doc. 77, at 7), in light of the possibility that ticket No. 14067 may have been Mr. Jenkins' final load, Progressive is entitled to know Heck's verified response.

## Conclusion

For the foregoing reasons, Progressive's Motion to Propound Additional Interrogatories (Rec. Doc. 74) is GRANTED in part and DENIED in part. Within 7 days, Heck will produce a privilege log for any documents withheld as privileged. Within 14 days, Heck will respond to the following: Interrogatory 9(a) for all remaining load tickets listed; Interrogatory 10; Interrogatory 11; Interrogatory 13; Interrogatory 14; Interrogatory 15; and Interrogatory 20.

New Orleans, Louisiana, this 12th day of June, 2020.

_____
Janis van Meerveld
United States Magistrate Judge