UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE PALOVERDE INSURANCE COMPANY, *Plaintiff* | CIVIL ACTION NO.  19-12840 c/w 19-13010, 19-13011, 19-13082, 20-392 |
| VERSUS | SECTION:  "J" (1) |
| ESTATE OF BOBBIE J. JENKINS, ET AL., *Defendants* | JUDGE CARL J. BARBIER |
| | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the Second Motion for Protective Order and/or Motion to Quash Subpoena filed by Progressive Paloverde Insurance Co. ("Progressive"). (Rec. Doc. 186). Oral Argument was held on December 9, 2020. The court denied the motion as to the deposition of Tricia Casey and took the issue of the documents requested in the subpoena under submission. For the following reasons, as to the remaining issues, the Motion to Quash is GRANTED in part and DENIED in part.

Background

These consolidated lawsuits arise out of a collision between an Amtrak train and a dump truck that occurred on or about October 10, 2018 at a railroad crossing in Tangipahoa Parish. Bobby Jenkins, the driver of the dump truck, perished from injuries sustained in the crash. Certain passengers claim they have suffered injuries as a result of the train decelerating. It is alleged that Mr. Jenkins was hauling sand or similar materials for Heck at the time of the incident. Numerous related lawsuits were filed and consolidated, including claims by the Estate of Bobby Jenkins, by Amtrak employees Kimberly Hershey and Jonette Nagra, and by passenger Derek Lagarde. The lead action was filed by Progressive Paloverde Insurance Company ("Progressive"), which

1

provided a commercial insurance policy to Bobby Jenkins. Progressive seeks a declaratory judgment that its policy affords only non-trucking coverage, that Heck and BJ Trucking Earthmover LLC are not additional insureds, that the policy does not insure any additional insured for non-covered acts of an insured, that the policy does not insure the liability of any individual or entity involved in the October 10, 2018, collision, and that Progressive has no duty to defend any individual or entity against claims arising from the collision.

At a status conference on December 2, 2020, the district court continued the trial date, which is now September 27, 2021.  A new discovery deadline has not yet been set. At the status conference, the court ordered the parties to go forward with any scheduled depositions.

On November 17, 2020, Progressive filed a Motion for Summary Judgment seeking a declaration that the Progressive policy does not provide coverage for any of the asserted claims or impose a duty to defend against such claims and an order dismissing with prejudice all claims against Progressive. (Rec. Doc. 143-3).  It argues that the non-trucking policy does not provide coverage for the truck at issue when it is hauling cargo or engaged in a business purpose because of an endorsement added in 2017, which reduced Mr. Jenkins' premium from $17,612 to $3,022. Id. at 5. Citing the unsworn declaration of its underwriting representative, Progressive says that it informed Mr. Jenkins that the change would mean that there was no coverage for accidents when he was under haul and that in such instances, the person for whom he was hauling would be responsible for his liability insurance. Id. at 4-5. Here, Progressive says, the accident happened while Bobby Jenkins was hauling a load of sand he had been hired to carry by a customer of a commercial sand/gravel pit. Id. at 1. Therefore, it argues, the policy does not provide coverage. Id. As an exhibit in support of its motion for summary judgment, Progressive included an unsworn declaration of Tricia Casey, a claims casualty specialist senior with Progressive who was the

adjuster assigned to the claim that is the subject of these lawsuits. (Rec. Doc. 143-4). She authenticated the Progressive insurance policy and attached it to her declaration. Id. She declared that when Bobby Jenkins' wife reported the accident, she told Progressive that Bobby Jenkins was on the job picking up sand from the pit and that he worked for Heck. Id. Ms. Casey also declared that at no time during her investigation had she been provided with any documentation or information that would give her reason to believe that Bobby Jenkins was not transporting sand in connection with a business at the time of the accident. Id.

According to Heck, there is no factual basis for Ms. Casey's statements that Mr. Jenkins was transporting sand for Heck at the time of the accident.[1] Heck says the evidence shows that Mr. Jenkins hauled three loads of gravel for Heck on the morning of the accident, but no loads of sand. There was no scale ticket for the sand, no invoice for the sand, and no other document linking Heck to the sand that Jenkins was hauling.

Heck served a subpoena for the deposition of Ms. Casey. The subpoena also requires production of Ms. Casey's "files and any notes, memos, reports, journal entries, emails and texts in connection with [the Progressive insurance policy at issue in this litigation] and all documents reviewed by you to prepare for your deposition." Progressive filed a Motion for Protective Order and/or Motion to Quash.[2] As to the deposition, the court denied the motion at oral argument, finding that Ms. Casey's testimony is relevant because in support of its motion for summary judgment, Progressive has relied, in part, on Ms. Casey's personal knowledge of what Ms. Jenkins told her when she reported the accident. Additionally, following the accident, Ms. Casey authored

---

[1] Heck also opposes Progressive's motion for summary judgment on other grounds.

[2] Heck originally set Ms. Casey's deposition for November 30, 2020. Progressive sought an emergency protective order in part because of personal scheduling conflicts of Ms. Casey. The court granted the motion, reset Ms. Casey's deposition for December 15, 2020, and issued a briefing schedule for Progressive's present motion concerning whether Ms. Casey's deposition should be allowed to proceed at all. The court also continued the submission date on Progressive's Motion for Summary Judgment from December 2, 2020, to January 13, 2021, so that Heck could supplement its opposition to that motion with the testimony obtained during Ms. Casey's deposition.

numerous letters to claimants informing them that Progressive's policy provided only limited liability coverage for non-trucking use of an automobile and that "[a]t the time of this accident, Mr. Jenkins was hauling a load of sand for Heck Industries."

With regard to the documents, Progressive argues that Ms. Casey does not have custody or control of the requested documents because the documents are Progressive's. Progressive also argues that it has already responded to voluminous discovery from Heck. Progressive further argues that information and documents related to Progressive's claim investigation are protected by the work product doctrine because they were made in anticipation of litigation.

Heck responds that to the extent the requested documents are in Ms. Casey's custody or control, they must be ordered produced. It also argues that if the documents are within Progressive's control, they should be produced by Progressive in response to pending requests for production of documents that it issued to Progressive. Heck did not address Progressive's work product doctrine argument in its briefing.

At oral argument, Progressive reported that since the filing of Heck's opposition to the present motion, it has produced the entire underwriting file. However, Progressive is withholding responsive documents in the claims file on the basis of the work product doctrine. Progressive has not produced a privilege log. Progressive also argued that the requests for production are more limited and do not include all the documents required by the subpoena.

<u>Law and Analysis</u>

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need

not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

　　2.　*Work Product Doctrine*

　　　The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). As Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product doctrine extends to materials prepared by the party itself and representatives other than attorneys, but the requirement that protected materials be prepared in anticipation of litigation remains. If the party resisting discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and "it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. Proc. 26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014).

　　　"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted). Thus, even when a party shows it has substantial need for the materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B).

Such materials are known as "opinion work product." "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 721 (5th Cir. 1985)

Because only documents prepared in anticipation of litigation are protected by the work-product doctrine, "[m]aterials assembled in the ordinary course of business," are excluded from work product materials. El Paso, 682 F.2d at 542 (quoting Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 501 (1969, 1970) (alteration in original). But the work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'"  In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)).

Factors that courts rely on to determine the primary motivation for the creation of a document include:

> the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted).

An insurance company is "in the business of conducting, investigating and evaluating claims against its policies," so determining whether claims investigation and claims adjustment documents are discoverable requires a fact specific inquiry. Kansas City S. Ry. Co. v. Nichols

Const. Co., No. CIVA 05-1182, 2007 WL 2461014, at *4 (E.D. La. Aug. 27, 2007); see Schenck

v. State Farm Mut. Auto. Ins. Co., No. CV 11-2598, 2012 WL 13001032, at *4 (E.D. La. June 15,

2012) (quoting Jones v. Secord, No. CIV.A. 11-91101-PBS, 2011 WL 2456097, at *3 (D. Mass.

June 15, 2011)) ("Coverage investigations by insurance companies are not per se conducted in

anticipation of litigation, and a determination as to whether documents generated during such

investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of

business, should be made on a case-by-case basis."). "To show that a document was prepared in

anticipation of litigation, courts have required that the insurer point to a 'critical factor that made

it anticipate litigation . . . and offer specific facts demonstrating that the critical factor did indeed

make the insurer deal with the insured in a different way.'" Kansas City, 2007 WL 2461014, at *4

(Stout v. Illinois Farmers Ins. Co., 852 F. Supp. 704, 707 (S.D. Ind. 1994)).

     In Kansas City, for example, the court found that communications between the insurance

company and its claims adjuster were protected by the work product doctrine because the accident

was so serious and the damages so significant, that litigation would have been anticipated from the

day of the accident. 2007 WL 2461014, at *6. But in Schenk, the court found that the majority of

documents withheld by the insurance company defending a car accident personal injury claim by

its insured were not protected. 2012 WL 13001032, at *5. The court had reviewed the documents

in camera and determined that the insurance company had not retained counsel until after receiving

a copy of the lawsuit, that there was no evidence that in house counsel was involved during two

years of pre-suit claims handling, and there was no specific mention of any anticipated litigation.

Id.

     In Dunn v. State Farm Fire & Casualty Co., the court noted that "whenever an insurer has

a general suspicion about a claim which gives the insurer reason to believe it will deny the claim,

the insurer may anticipate litigation." 122 F.R.D. 507, 510 (N.D. Miss. 1988). In that case, the day after the fire, the insured confessed to setting fire to his own house. Id. The insurer found out about the confession a week later and hired counsel within the next week. Id. The court found that although counsel is sometimes retained in the ordinary course of business to determine whether to deny a claim, because of the confession, the insurers anticipated litigation when they hired counsel. Id. The Dunn court required production of a claims committee report that evaluated the claim, even though a claim committee is not a routine part of the insurer's adjusting process, because "adjusting claims is normal business of an insurance company." Id.  at 511. The court noted that the work product doctrine protects only documents prepared by or for counsel and only excluded from production those portions of the report that recited the attorneys' evaluation of the claim. Id.

3.  *Subpoenaed Documents*

For the same reason that the court found Ms. Casey's testimony relevant, at least some of her claims file materials are relevant. For example, the court finds her notes regarding her conversations with Ms. Jenkins regarding what Mr. Jenkins was doing at the time of the accident are relevant. So are any other objective investigation materials bearing on her conclusion, as reflected in her letters to claimants, that Mr. Jenkins was hauling sand for Heck at that time of the accident and bearing on her declaration that during the investigation she received no information to cause her to doubt that Mr. Jenkins was hauling sand for a commercial purpose at the time of the accident.[3]

---

[3] At oral argument, Heck also argued that it alleges Progressive's bad faith and that the claims file is relevant to this issue. In Dixie Mill Supply Co. v. Continental Casualty Co., the court held that merely alleging bad faith was not enough to automatically permit discovery of the claims file. 168 F.R.D. 554, 559 (E.D. La. 1996). The court required that the insured show that the insurer intended to prove its counterclaims or their good faith by disclosure of the contested documents. Id. No such evidence has been presented here and the court cannot now conclude that the entire claims file is relevant as a result of the allegation of bad faith.

With regard to the work product argument, the parties have minimally briefed the issue. The court agrees with Progressive that  litigation was anticipated early on. Progressive has not reported when it retained outside counsel. But Progressive would likely have anticipated litigation around the time the accident was reported because the accident was serious and resulted in a fatality, because there was a possibility of numerous train passenger claimants, and because there was, according to Ms. Casey, a possible coverage exclusion evident at the time the accident was reported. But an insurance company is in the business of adjusting claims. If particular documents would have been created regardless of whether litigation was anticipated, they may not be protected by the work product doctrine. See Piatkowski, at 2000 WL 1145825, at *2; Dunn,  122 F.R.D. at 511.

To the extent any "note, memos, reports, journal entries, emails and texts" regarding Ms. Casey's conversations with Ms. Jenkins regarding Mr. Jenkins' hauling activities or bearing on her conclusions that Mr. Jenkins was hauling sand for Heck are in Ms. Casey's personal possession, they must be produced or listed on a privilege log if Progressive contends that they were not prepared in the ordinary course of business. To the extent such documents are responsive to outstanding documents requests, the court would similarly expect Progressive to produce them or list them on a privilege log so that Heck can determine whether to challenge the specific assertion of privilege. Additionally, the court notes that there appears to be no dispute that Ms. Casey must produce documents she relies on in preparing for her deposition. These documents must also be produced.

Conclusion

For the foregoing reasons, as to the remaining issues, the Second Motion for Protective Order and/or Motion to Quash Subpoena (Rec. Doc. 186) is GRANTED in part and DENIED in

part. Ms. Casey shall produce responsive documents in her possession, subject to the limits

described above.

New Orleans, Louisiana, this 11th day of December, 2020.

Janis van Meerveld
United States Magistrate Judge