UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE PALOVERDE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | No.: 19-12840<br>c/w 19-13010<br>c/w 19-13011<br>c/w 19-13082<br>c/w 20-392 |
| ESTATE OF BOBBY JENKINS, ET AL | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 247)** filed by Defendants, Illinois Central Railroad Company ("Illinois Central") and CN Worldwide, Inc. ("CN Worldwide") (collectively referred to herein as "IC/CN") and National Railroad Passenger Corporation ("Amtrak"). Oppositions were filed by Plaintiffs, BJ Trucking Earthmover, LLC; Katie Jenkins, individually, and as representative of the estate of Bobby Jenkins; Derek Lagarde; Jonette Nagra; and Kimberly Hershey. (Rec. Docs. 277, 278, 283, 284). Defendants filed a reply to Plaintiffs' opposition. (Rec. Doc. 303). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On October 10, 2018, in Tangipahoa Parish, Bobby Jenkins was operating a 1998 Peterbilt Model 379 semi-truck, owned by BJ Trucking Earthmover, LLC ("BJ Trucking"), which was pulling a 1983 Mate dump trailer also owned by BJ Trucking. Bobby Jenkins was in the process of hauling sand or similar material from a private pit ("the Fluker pit"), which was located on property leased by Industrial Aggregates.

After filling the trailer, Bobby Jenkins proceeded westward on a road neither owned nor leased by Industrial Aggregates and attempted to cross the railroad crossing DOT #930094V ("the Crossing") while en route to U.S. Highway 51.[1] While approaching the Crossing, Bobby Jenkins ignored the stop sign and crossbucks and did not slow down. When he attempted to drive across, the truck driven by Bobby Jenkins collided with southbound Amtrak Train #59. Bobby Jenkins perished from injuries sustained in the crash.

A video recording of the collision shows that Jonette Nagra ("Nagra"), locomotive engineer for Amtrak and a plaintiff in this case, applied the train's horn for approximately 21 seconds while approaching the Crossing prior to the accident. (Rec. Doc. 274-3). While the horn was blaring, Bobby Jenkins's vehicle continued in motion to cross the track. (Rec. Doc. 247-3). When Nagra realized that Bobby Jenkins was not going to stop as he neared the Crossing, she ceased applying the horn, likely to brace herself and begin applying the emergency brake. About one second after

---

[1] There appears to be a great deal of confusion among the parties regarding the correct DOT number for the Crossing; however, whether or not this is the correct DOT number is irrelevant to the substance of this order.

Nagra ceased applying the horn, Bobby Jenkins entered the Crossing, and, three seconds later, the train collided with Bobby Jenkins's truck. (Rec. Doc. 274-3).

On October 10, 2019, Bobby Jenkins' widow, Katie Jenkins, filed suit in the 21st District Court for Tangipahoa Parish. On February 4, 2020, the case was removed to this Court and subsequently transferred to the undersigned on February 5, 2020, to be consolidated with four related cases. The other plaintiffs in this matter are Nagra and Kimberly Hershey ("Hershey"), employees of Amtrak who were on the train at the time of the collision, and Derek Lagarde ("Lagarde"), a passenger on the Amtrak train.

All of the plaintiffs named IC/CN as a defendant due to their alleged negligent maintenance and upkeep of the Crossing and failure to properly equip the Crossing with adequate warning devices. Katie Jenkins and Lagarde filed suit against Amtrak due to their alleged failure to properly use the train's horn and failure to instruct Nagra in the use of the train's emergency braking system. In addition, Lagarde also alleges that Amtrak failed to properly prepare him for an emergency and failed to warn him when the collision was imminent. Nagra and Hershey filed claims against Amtrak under FELA.

On December 29, 2020, Defendants filed the present motion for summary judgment, arguing that they were not negligent, and, in the alternative, Bobby Jenkins's negligence was the sole cause of the accident.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Int'l *Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

4

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. IC/CN DID NOT BREACH ANY DUTY OWED TO BOBBY JENKINS

Plaintiffs argue that the efforts taken by IC/CN to maintain the safety of the Crossing are not commensurate with the danger of the Crossing due to other collisions and alleged "near misses." Under Louisiana law, railroad companies have a duty to maintain safe crossings, including private crossings, "such that [they] can be safely traversed by motorists using reasonable care." *Dehart v. Burlington N. & Santa Fe R. Co.*, 03-279 (La. App. 5 Cir. 10/28/03), 860 So. 2d 248, 257, *writ denied*, 2003-3251 (La. 2/6/04), 865 So. 2d 732. The Crossing in this case was a private crossing, to which most statutory requirements of public crossings do not apply. (Rec. Docs. 277, at p. 2; 303, at p. 2).

The United States Fifth Circuit Court of Appeals recently discussed the safety requirements at private crossings in Louisiana in *Ryder v. Union Pacific Railroad Company*, noting that, aside from the general duty to maintain a safe crossing, it is

unclear what specific safety requirements apply to private crossings and that the last case discussing the respective duties of private crossings versus public crossing is nearly 100 years old. 945 F.3d 194, 200 (5th Cir. 2019) (citing *Townsend v. Mo. Pac. R.R. Co.*, 3 La. App. 598, 603–04 (1925). For these reasons, the Fifth Circuit decided that, as a federal court applying Louisiana law, it should not issue a holding affecting tort duties relating to all private railroad crossings. *Id.* However, given this ambiguity in the law, the Fifth Circuit explained that railroads managing private crossings may reasonably rely on and defer to mandates by the Louisiana Department of Transportation and Development, and any extra warning devices would be an unusual precaution, only necessary in exceptional circumstances. *Id.* In analyzing whether exceptional circumstances warranted additional warning devices, the Fifth Circuit asked whether such signage would have provided motorists with "sufficient warning ... commensurate with the danger of the crossing." *Id.* at 202 (quoting *Duncan v. Kansas City S. Ry. Co.*, 2000-0066 (La. 10/30/00), 773 So. 2d 670, 676). Applying the facts of that case under this standard, the Fifth Circuit found that the railroad sufficiently fulfilled its duty to maintain a safe crossing by installing a crossbuck and stop sign and clearing surrounding vegetation such that motorists' vision of an incoming train would not be obstructed. *Id.*

In an effort to show how IC/CN's efforts were insufficient, Plaintiffs submitted to the Court an affidavit by Nagra, in which she claims that she has reported numerous "near misses" at the Crossing in the last 17 years, and, after reporting the accident, employees of CN Worldwide stated that "it was a bad crossing, it had been

6

reported numerous times, and no one was going to do anything about it." (Rec. Doc. 238-4, at ¶¶4, 7). However, the statements of the CN Worldwide employees are inadmissibly hearsay, and, aside from her self-serving affidavit, Nagra has not presented the Court with any evidence supporting her allegations of other "near misses" at the Crossing.

Additionally, Plaintiffs submitted incident reports for five accidents that occurred at the Crossing. Of these incident reports, one relates to the collision, which is the subject of this litigation, three relate to collisions that occurred in 1998, 2001, and 2004, and one relates to a near-collision that occurred in 2020. (Rec. Doc. 278-8). Plaintiffs also cite to deposition testimony indicating that, as a result of these incidents, an employee for Industrial Aggregates now signals when it is safe for trucks leaving the pit to cross at the Crossing. (Rec. Doc. 247-7, at pp. 67-69).

On the other hand, there were stop signs and crossbucks present at the Crossing. Plaintiffs argue that these stop signs were weather-beaten and the crossbuck was improperly reflective. A review of the photographs shows that, although the signs were somewhat weathered, they were still both identifiable and legible. (Rec. Docs. 136-2, at p. 57; 136-4, at pp. 34-35). Furthermore, no reasonable finder of fact could conclude an experienced commercial motor vehicle driver, such as Bobby Jenkins, would not have been able to identify the stop signs and crossbuck. (Rec. Docs. 136-6, at ¶10; 206-1, at ¶10). This is especially true since Bobby Jenkins had been driving in and out of the Fluker pit for years and had hauled multiple loads

from the Fluker pit on the day of the accident. (Rec. Docs. 136-6, at ¶¶16-17; 206-1, at ¶¶16-17).

The Court also notes the uncontradicted deposition testimony of Lt. Michael Moore, the responding officer, and Michael Dooley Simmons, an employee of Industrial Aggregates of the Florida Parishes, LLC ("Industrial Aggregates"),[2] wherein they testified that there were no obstructions to a driver's view of an approaching train, the stop signs, or the crossbuck when approaching the railroad tracks. (Rec. Docs. 136-2, at pp. 69-70, 136-4, at pp. 72-73). Further, the photographs taken by the Tangipahoa Parish Sheriff's Office on the day after the accident do not show any obstructions to a driver's view of an approaching train, the tracks, the stop sign, or the crossbuck at the Crossing. (Rec. Docs. 136-2 at p. 57; 136-4 at pp. 34-35).

Despite the other collisions cited by Plaintiffs, Defendants simply cannot be held liable for the choice of these motorists to completely ignore warnings signs, their ears, their eyes, and their own statutory requirements. Under Louisiana law, motorists are required to stop within fifty feet but not less than fifteen feet from the nearest rail of a railroad when: (1) there is a stop sign erected at a crossing, (2) an approaching train is plainly visible, or (3) an approaching train emits a signal. LA. REV. STAT. § 32:171. Further, motorists are statutorily required to slow down to a reasonable speed or stop if necessary, look in both directions, listen, and yield for any oncoming train at the railroad crossing. LA. REV. STAT. § 32:175. As stated above, stop signs and a crossbuck were present at the Crossing and drivers had sufficient

---

[2] Industrial Aggregates was a named defendant in this case but was subsequently dismissed after the Court granted its motion for summary judgment. (Rec. Doc. 231).

clearance past the vegetation to see any oncoming train without placing themselves in danger. Thus, the Court finds that Bobby Jenkins was provided with sufficient warning commensurate with the danger of the Crossing.

Plaintiffs also argue that the dangerous trap doctrine applies in this case. Under the dangerous trap doctrine, a railroad will be held liable unless it took extra precautions when "a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has view of the oncoming train." *Burk v. Illinois Cent. Gulf R.R. Co.*, 529 So. 2d 515, 518 (La. App. 1st Cir. 1988). The dangerous trap doctrine does not apply when: "(1) the motorist had a clear view of the tracks at a point in which would not have placed the motorist in a perilous position; and (2) the motorist was familiar with the prevailing conditions at the crossing." *Holland v. Norton*, 70 F. Supp. 2d 666, 670 (E.D. La. 1999) (citing *id.*).

Contrary to Plaintiffs' argument, as stated above, Bobby Jenkins's view at the time of the accident was not obstructed, and Bobby Jenkins was very familiar with the conditions of the Crossing due to his years of hauling from the Fluker pit and multiple hauls on the day of the collision. For these reasons, the dangerous trap doctrine does not apply in this case. *See Holland*, 70 F. Supp. 2d at 670. Accordingly, no reasonable finder of fact could conclude that IC/CN breached their duty to maintain the Crossing such that it could be safely traversed by motorists using reasonable care.

## II. THE ACCIDENT WAS SOLELY CAUSED BY BOBBY JENKINS

There are no material facts supporting Plaintiffs' contention that any breach of duty by Defendants caused the accident. The video of the collision shows that Bobby Jenkins did not slow down or stop prior to driving over the Crossing. (Rec. Doc. 247-3). Further, there was a stop sign at the Crossing, the approaching train was plainly visible from at least fifteen feet before the Crossing, and the train sounded its horn until shortly before the accident. "A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard." *Glisson v. Mo. Pac. R.R. Co.*, 165 So. 2d 289, 291 (1964). Thus, since Bobby Jenkins breached his duty to stop and to yield to the oncoming train, any reasonable finder of fact would conclude this failure was the cause of the accident. Therefore, the remaining question is whether any other parties' negligence also contributed to the accident.

In support of their arguments, Plaintiffs primarily rely upon *Johnson v. Clark Gin Service, Inc.* No. CV 15-3290, 2017 WL 2123846, at \*5 (E.D. La. May 12, 2017) (Brown, C.J.). In that case, another judge sitting in this district declined to grant summary judgment under facts similar to those presented to the Court here, noting that the plaintiff had submitted sufficient evidence to show that Amtrak's failure to slow the train and failure to warn of an impending collision could have played a part in causing the plaintiff's injuries. *Id.* at 10. However, the facts of these cases are factually distinguishable because the driver in that case fully stopped on the train

10

tracks, and it was apparent that the driver was not yielding to the train 21 seconds before the collision occurred, whereas in this case, it only became apparent to Nagra that Bobby Jenkins was not yielding four seconds before the collision occurred. *Id.* at 5, 11.

Plaintiffs contend that Amtrak's failure to properly use the train horn was a cause of the accident. 49 C.F.R. § 222.21(b)(3) and Rule 410 of CN Worldwide's U.S. Operating Rules require trains to sound their horn not less than one-quarter of a mile from a public railroad crossing until the crossing is covered. (Rec Doc. 278-6 at pp. 29-30). However, neither of these rules apply in this case because the Crossing was a private crossing, not a public crossing. Additionally, Louisiana law also does not require trains to sound their whistles at private crossings. *Kansas City S. Ry. Co. v. Little O's Trucking, Inc.*, 71 F. App'x 441 (5th Cir. 2003).

Federal law preempts the subject of train horn operation in emergencies. *Ryder*, 945 F.3d at 203. Thus, a claim for failure to engage the horn in an emergency is only colorable if it alleges failure to comply with a federal standard of care or with the railroad's own standard. 49 U.S.C. § 20106(b)(1)(A), (B). The only federal regulation that applies to the use of train horns in an emergency is 49 C.F.R. § 222.23(a)(1), which grants the locomotive engineer the sole discretion to sound the horn in emergency situations. Since the use of the horn in such an instance is in the sole discretion of the locomotive engineer, the railroad has no duty to instruct its engineers on the use of a train horn in an emergency. *See Ryder*, 945 F.3d at 204. Thus, Defendants had no duty with regards to the use of the train horn in this case.

Even assuming, *arguendo*, Amtrak had a duty to sound the horn until it passed the Crossing, the breach of that duty did not cause the collision in this case. Despite Plaintiffs' contentions, the horn did not stop until four seconds before the collision, when it became apparent to Nagra that Bobby Jenkins was crossing onto the tracks. (Rec. Doc. 247-3). Since the train was approaching at a speed of 79 miles per hour, it is estimated that the train was 464 feet away when Nagra ceased applying the horn. (Rec. Doc. 277-2, at ¶17).

After reviewing the video submitted by Defendants, it is apparent to the Court that, even if the horn had continued blaring, Bobby Jenkins could not have crossed the tracks in time if he had accelerated nor did he have time to stop and put his vehicle in reverse to get off of the tracks. (Rec. Doc. 247-3). Accordingly, the Court finds that, even if Amtrak had a duty to sound the horn, which it did not, no reasonable finder of fact could conclude that Amtrak's failure to apply the locomotive horn in the four seconds before the collision was a cause of the collision or contributed to Plaintiffs' injuries.

Plaintiffs also argue that Amtrak's failure to train Nagra regarding when to apply the emergency brake was a cause of the accident. The Court declines to find that Amtrak breached any duty to train Nagra regarding the use of the emergency brake because "such training would have to vary exponentially depending upon the peculiar circumstances of any given collision." *Miciotto v. Brown*, No. CIV.A. 02-1485, 2003 WL 22326559, at *4 (E.D. La. Oct. 6, 2003). Further, Plaintiffs have not offered

12

any evidence to suggest how such training would have prevented or mitigated the collision in this case. *See id.*

Finally, Plaintiffs argue that Amtrak's failure to promptly engage the emergency brake was a cause of the accident. Under Louisiana law, a "train need not slow down at all or attempt to stop upon seeing a vehicle approaching an upcoming crossing." *LeJeune v. Union Pacific Railroad*, 712 So.2d 491 (La. 4/14/98). Therefore, Nagra did not have any reason to engage the emergency brake until Bobby Jenkins attempted to drive through the Crossing, which occurred four seconds before the collision. (Rec. Doc. 247-3). Notably, none of the memoranda filed by Plaintiffs reference when exactly the emergency brake was engaged. However, the video of the accident shows that the train was unable to come to a complete stop until thirty seconds after the collision occurred. (Rec. Doc. 247-3). Thus, even if the emergency brake had been engaged immediately, it would not have prevented the collision, nor the death of Bobby Jenkins. For these reasons, the Court finds that no reasonable finder of fact could conclude that Amtrak's failure to engage the emergency brakes in a timely manner was the cause of the collision or contributed to Plaintiffs' injuries.

Since Plaintiffs have failed to submit any material facts supporting their claim that Defendants were negligent, the Court finds that Bobby Jenkins's negligence was the sole cause-in-fact of the collision. *See Goodwyne v. People's Moss Gin*, Inc., 96-1340 (La. App. 3 Cir. 4/30/97), 694 So. 2d 1101, 1106 (reversing the jury's decision to apportion fault to the driver, railroad, and crew and, instead, assigning 100% of fault to the driver); *Healy v. Nat'l R.R. Corp. (Amtrak)*, 613 So. 2d 1117, 1122 (La. App. 5

Cir. 2/10/93) (finding jury did not err in apportioning 100% of fault to driver due to his "inattentiveness in failing to see the oncoming train or the signals at the crossing which warned of the train's approach.").

### III.   FELA

Next, Plaintiffs Nagra and Hershey argue that Amtrak is liable under FELA. FELA allows railroad employees to recover damages for "injury or death resulting in whole or in part from the negligence" of the railroad company. 45 U.S.C. § 51. To prevail under FELA, "a plaintiff must prove: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Weaver v. Missouri Pac. R. Co.*, 152 F.3d 427 429 (5th Cir. 1998). Only the negligence prong is contested in this case. Under FELA, negligence exists when the defendant railroad company "knew, or by the exercise of due care should have known" that its conduct was "inadequate to protect [the plaintiff] and similarly situated employees." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 417 (5th Cir. 2012). Like most negligence claims, FELA merely requires an employer to exercise "ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997). Thus, under FELA, the employer is not held to a higher standard of care than that imposed under state tort law. *See Miciotto*, 2003 WL 22326559, at *2 (rejecting argument that the standard of care under FELA is higher than under Louisiana tort law); *Huffman*, 675 F.3d at 417.

If an injury has multiple causes, "it is sufficient if the railroad's negligence played a part—no matter how small—in bringing about the injury." Since the burden of proof is "featherweight," the Fifth Circuit has held that "judgment as a matter of law against the plaintiff in a FELA suit is appropriate only when there is a complete absence of probative facts supporting the plaintiff's position." *Rivera v. Union Pac. R.R.*, 378 F.3d 502, 507 (5th Cir. 2004). However, FELA plaintiffs are not excused from establishing "all the same elements as are found in a common law negligence action." *Armstrong v. Kan. City S. Ry. Co.*, 752 F.2d 1110, 1113 (5th Cir. 1985).

As explained above, Plaintiffs have not produced material facts showing that Amtrak breached any duty that any reasonable juror could find caused or contributed to this accident. Therefore, Nagra and Hershey's FELA claims against Amtrak should also be dismissed.

### IV.  COMMON CARRIER CLAIMS

Finally, Lagarde claims that Amtrak breached its duty as a common carrier to provide him with safe passage. Specifically, Lagarde alleges that he struck his shoulder against the seat of the train because he was unable to brace himself for impact due to Amtrak's failure to notify him of the incoming collision. "[T]he mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincing by overcoming the prima facie case." *Galland v. New Orleans Pub. Serv., Inc.*, 377 So. 2d 84, 85 (La. 1979). The common carrier has the burden of proving that it exercised reasonable care in discharging the

15

plaintiff or that any negligence on its part was not the legal cause of the plaintiff's mishap." *Id.*

In addition to the arguments previously discussed, Lagarde argues that Amtrak failed to provide its passengers with an explanation of its emergency procedures or a warning of the imminent collision as required under 49 CFR 239.101(7). However, even if Amtrak had provided emergency procedures, there was simply no time under these circumstances to warn the passengers of the incoming collision. As explained above, Louisiana law does not require trains to slow down when a vehicle is approaching a crossing, and Nagra realized that Bobby Jenkins was going to cross the tracks a mere four seconds before impact. Under Lagarde's theory of liability, Defendants note that Nagra should have: "(1) determined that Mr. Jenkins had fouled the crossing, (2) initiated the emergency brake, (3) sounded the horn continuously, (4) announced to the passengers that a collision was imminent, and (5) braced for impact to protect herself" all within four seconds. (Rec. Doc. 303, at p. 15). The mere suggestion that Amtrak breached its duty to warn its passengers under these circumstances is patently unreasonable.

Even assuming, *arguendo*, that Nagra had a duty to warn the passengers under these circumstances and had been able to warn the passengers of the incoming collision the instant she realized what was happening, it would be unreasonable to conclude that this three second warning would have been sufficient for Lagarde to process what was happening and brace himself sufficiently to lessen the severity of his injuries. Therefore, the Court concludes that Amtrak did not breach its duty as a

common carrier; and, even if it had breached its duty, no reasonable finder of fact could find that said breach caused or contributed to Lagarde's injury.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 247)** filed by Illinois Central Railroad Company, CN Worldwide, Inc., and National Railroad Passenger Corporation (Amtrak) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Illinois Central Railroad Company, CN Worldwide, Inc., and National Railroad Passenger Corporation (Amtrak) are hereby **DISMISSED with prejudice**.

New Orleans, Louisiana, this 5th day of February, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE