UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE PALOVERDE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | No.: 19-12840 |
| | c/w 19-13010 |
| | c/w 19-13011 |
| | c/w 19-13082 |
| | c/w 20-392 |
| ESTATE OF BOBBY JENKINS, ET AL | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 143)** filed by Progressive Paloverde Insurance Company ("Progressive"). Oppositions were filed by Heck Industries Incorporated ("Heck") and Gray Insurance Company ("Gray"). (Rec. Docs. 162, 164, 288, 293). Progressive filed a reply (Rec. Doc. 307), and Gray filed a sur-reply (Rec. Doc. 312). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On October 10, 2018, in Tangipahoa Parish, Bobby Jenkins was operating a 1998 Peterbilt Model 379 semi-truck, owned by BJ Trucking Earthmover, LLC ("BJ Trucking"), which was pulling a 1983 Mate dump trailer also owned by BJ Trucking. Bobby Jenkins was in the process of hauling sand from a private pit ("the Fluker pit"),

which was located on property leased by Industrial Aggregates of the Florida Parishes, L.L.C. ("Industrial Aggregates").

After filling the trailer with 27 tons of sand, Bobby Jenkins proceeded westward on a road neither owned nor leased by Industrial Aggregates and attempted to cross the railroad crossing DOT #930094V ("the Crossing") while en route to U.S. Highway 51.[1] While approaching the Crossing, Bobby Jenkins ignored the stop sign and crossbucks and did not slow down. When he attempted to drive across, the truck driven by Bobby Jenkins collided with southbound Amtrak Train #59. Bobby Jenkins perished from injuries sustained in the crash.

On September 26, 2019, Progressive, who insured Bobby Jenkins's truck, filed the instant declaratory action. On October 10, 2019, Bobby Jenkins's widow, Katy Jenkins, filed suit in the 21st District Court for Tangipahoa Parish. On February 4, 2020, the case was removed to this Court and subsequently transferred to the undersigned on February 5, 2020, to be consolidated with four related cases. The other plaintiffs in this matter are Nagra and Kimberly Hershey ("Hershey"), employees of Amtrak who were on the train at the time of the collision, and Derek Lagarde ("Lagarde"), a passenger on the Amtrak train. Among the named defendants were Heck, who Plaintiffs allege was Bobby Jenkins's employer, and Gray, who insured Heck.

At the time of the accident, Bobby Jenkins was the named insured on Progressive policy number 03857749-2, which was a non-trucking liability policy. The

---

[1] There appears to be a great deal of confusion among the parties regarding the correct DOT number for the Crossing; however, whether or not this is the correct DOT number is irrelevant to the substance of this order.

2

policy insured Bobby Jenkins, Katy Jenkins, and BJ Trucking. Heck was listed as an additional insured.

Originally, the policy was a commercial liability policy, but, after an unrelated accident on April 25, 2017, Bobby Jenkins's annual premiums increased dramatically. On August 12, 2017, Bobby Jenkins renewed the policy and added a non-trucking liability endorsement. This endorsement meant that the policy would provide no liability coverage for accidents occurring when Bobby Jenkins's truck was used for hauling or for any business purpose. Instead, the person for whom he was hauling was responsible for his liability insurance. This endorsement resulted in an annual premiums reduction of $17,612.

On December 29, 2020, Progressive filed the present motion for summary judgment, arguing that this accident was not covered under their policy because Bobby Jenkins was hauling and/or driving for a business purpose at the time of the accident.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. THE NON-TRUCKING POLICY DID NOT COVER THIS ACCIDENT

Progressive's non-trucking policy explicitly excludes coverage for damages arising out of an accident if, at the time of the accident, the insured was hauling property or using the insured vehicle in any business or for any business purpose. (Rec. Doc. 143-5, at p. 40). At the time of the accident, Bobby Jenkins's truck was loaded with 27 tons of sand. (Rec. Doc. 136-5, at p. 24). The owner of the sand pit near the site of the accident testified that Jenkins loaded 27 tons of sand into a dump trailer attached to his 1998 Peterbilt truck just before the accident, and photographs of the scene of the accident show sand spilling from that trailer. (Rec. Doc. 143-7, at pp. 10-11). Thus, there is no material dispute that Bobby Jenkins was hauling at the time of the accident. Since the exclusion applies when Bobby Jenkins was hauling, this evidence alone is sufficient for the exclusion to apply.

Nevertheless, Heck and Gray argue that Bobby Jenkins requested a "bobtail" policy but received a "non-trucking" policy instead. Bobtail coverage typically applies when driving without hauling a trailer, whereas a non-trucking policy typically only applies when the truck is not being used for business purposes. However, as stated above, Progressive's policy excluded coverage when the insured is either hauling **or** using the truck for a business purpose. Regardless of whether this distinction was adequately explained to Bobby Jenkins, this does not create a cause of action in favor of Heck or Gray against Progressive because Bobby Jenkins was also using his truck

5

for a business purpose at the time of the accident, which would have been excluded under bobtail coverage.

Lanny Crowe, who was an employee of Industrial Aggregates, which operates the Fluker pit, testified that Bobby Jenkins retrieved the sand on behalf of a customer and that the cost of the sand was charged to that customer's open account, which demonstrates that Bobby Jenkins was using his vehicle for a business purpose. (Rec. Doc. 136-5, at pp. 15-21, 24). However, Industrial Aggregates allegedly destroyed the ticket for the sand and never invoiced the customer, so the identity of the customer is apparently unknown. (Rec. Doc. 143-3, at p. 2).

Although there is much speculation that Heck was the customer, which Heck denies, that determination is unnecessary for the purposes of this motion. All that is necessary is to determine whether Bobby Jenkins was either hauling or using his truck for a business purpose at the time of the accident. Since Bobby Jenkins was both hauling and using his truck for a business purpose, the non-trucking exclusion applies, and thus, Progressive has no duty to indemnify or defend any party in this litigation, nor does it owe statutory penalties or attorney's fees for its coverage denials.

## II. THE ENDORSEMENT DID NOT VIOLATE LOUISIANA LAW OR PUBLIC POLICY

Next, Heck and Gray argue that the endorsement violates Louisiana law and public policy. Specifically, Heck and Gray argue: (1) the endorsement violates Louisiana's public policy; (2) Progressive violated Louisiana's Compulsory Motor

Vehicle Liability Security Law; and (3) the endorsement renders the policy illusory as to Heck.

First, the Court must determine the validity of the endorsement. "[I]t is well-settled that, absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume." *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, 2007-0251 (La. App. 4 Cir. 10/10/07), 969 So. 2d 653, 659. Heck and Gray failed to cite a single case where such an endorsement or policy was found violative of Louisiana law or public policy; however, there are many cases where Louisiana courts upheld such policies as valid. *See, e.g.,* George v. Suarez, 2018-0484, 2019 WL 168526 (La. App. 1 Cir. 1/10/19); *LeBlanc v. Bailey*, 97-0388 (La. App. 4 Cir. 10/1/97), 700 So. 2d 1311; *Robinson v. Guillot*, 2007-1260, 2008 WL 1897698 (La. App. 3 Cir. 4/30/08). Therefore, the Court concludes that the endorsement is valid under Louisiana law and does not violate public policy.

Second, the Court must address whether Progressive violated any duty under Louisiana's Compulsory Motor Vehicle Liability Security Law. Under this law, the registered owner of the motor vehicle has a duty to maintain insurance. LA. REV. STAT. § 22:861(2)(a). However, insurers have no independent duty to determine the needs of the insured. *See e.g. Isidore Newman School v. J. Everett Eaves, Inc.*, 2009-2161 (La. 7/6/10), 42 So. 3d 352; *Tillman v. USAgencies Cas. Ins. Co.*, 46,173 (La. App. 2 Cir. 3/2/11), 58 So. 3d 1009; *Heidingsfelder v. Hibernia Ins., LLC*, 2009-0753 (La. App. 4 Cir. 11/18/09), 25 So. 3d 976. Thus, since Progressive had no duty to verify

whether Bobby Jenkins was carrying the requisite insurance, it cannot be held liable for any failure by Bobby Jenkins to carry the proper insurance.

Third, the Court must decide whether Progressive violated Louisiana's illusory coverage doctrine. Insurance coverage is illusory when the insured receives no benefit under the policy. *Rider v. Ambeau*, 11-0532, (La. App. 1 Cir. 2012), 100 So. 3d 849. However, as noted by Progressive, most cases where a Louisiana court determined than an insurance policy was illusory also included an explanation that the coverage provided by the policy was not commensurate with the premiums paid by the insured. *See, e.g., Boullt v. State Farm Mut. Auto. Ins. Co.*, 99-0942, p. 10 (La. 10/19/99), 752 So. 2d 739, 744; *Rider,* 100 So. 3d at 857. In this case, Bobby Jenkins contacted Progressive in order to obtain a "bobtail" policy, which led Progressive to suggest and explain its "non-trucking" policy. In exchange for adding the non-trucking endorsement, Bobby Jenkins's annual insurance premiums were reduced by $17,612. (Rec. Doc. 143-17, at p. 31). Since the non-trucking endorsement was commensurate with a significant reduction in premiums, the Court concludes that the insurance coverage was not illusory in this case. Indeed, to hold otherwise "would serve only to frustrate the reasonable expectations of the contracting parties." *Boullt,* 750 So. 2d at 744.

### III. PROGRESSIVE DID NOT VIOLATE ITS DUTY OF GOOD FAITH AND FAIR DEALING

Heck and Gray also argue that Progressive violated its duty of good faith and fair dealing owed by liability insurers to all insureds. *Smith v. Citadel Ins. Co.*, 285 So. 3d 1062, 1067 (La. 2019). This duty applies to additional insureds, such as Heck.

8

*Am Gulf VII v. Otto Candies, Inc.*, 1997 U.S. Dist. LEXIS 13414, at \*30-31 (E.D. La. 1997) (citing LA. REV. STAT. § 22:1120). Specifically, Heck and Gray assert that Progressive had a duty to notify Heck of the cancellation of its policy. *See Accardo v. Clarendon*, 751 So. 2d 975, 978 (La. App. 5 Cir. 2000).

Assuming, *arguendo*, that the addition of the non-trucking endorsement constituted a cancellation of the policy as to Heck, Heck and Gray still have no claim against Progressive because Heck was provided with notice prior to the accident. The only evidence provided to the Court surrounding this issue shows that Heck was notified of the policy change. On January 18, 2018, an employee of Heck called Progressive and requested a certificate of insurance for the policy at issue. (Rec. Doc. 294-8). During that call, Progressive sent the policy to Heck via fax, and Heck's employee verbally confirmed receipt of the certificate of insurance. (Rec. Doc. 294-8). This certificate of insurance explicitly stated that the policy provided coverage for "**<u>Non-Trucking</u>** Bodily Injury/Property Damage." (Rec. Doc. 143-19, at p. 48). This is notably different from prior certificates of insurance, which did not include the "non-trucking" language. (Rec. Doc. 143-16, at p. 14).

Finally, Heck and Gray argue that, even if Heck did receive this certificate of insurance, Heck was unaware of the substantive changes due to the policy's description of coverage as "$1,000,000 Combined Single Limits." This argument is unavailing. If Heck had any questions regarding the addition of the "non-trucking" language, Heck could have contacted Progressive or Bobby Jenkins. Progressive simply cannot be held liable for Heck's own failure to read the contents of the

9

certificate of insurance and/or failure to inquire regarding the meaning of "non-trucking." For the above reasons, the Court finds there is no genuine issue of material fact, and Progressive did not violate any duty owed to Heck.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 143)** filed by Progressive is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Progressive in the above-captioned matters are hereby **DISMISSED with prejudice**.

New Orleans, Louisiana, this 18th day of February, 2021.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE