UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE PALOVERDE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | No.: 19-12840<br>c/w 19-13010<br>c/w 19-13011<br>c/w 19-13082<br>c/w 20-392 |
| ESTATE OF BOBBY JENKINS, ET AL | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 246)** filed by Gray Insurance Company ("Gray"). Oppositions were filed by BJ Trucking Earthmover LLC ("BJ Trucking") and Katy Jenkins (Rec. Doc. 291) and by Progressive Paloverde Insurance Company ("Progressive") (Rec. Doc. 282) (collectively referred to as "the Opponents"). Gray filed a reply. (Rec. Doc. 300). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On October 10, 2018, in Tangipahoa Parish, Bobby Jenkins was operating a 1998 Peterbilt Model 379 semi-truck, owned by BJ Trucking, which was pulling a 1983 Mate dump trailer also owned by BJ Trucking. Bobby Jenkins was in the process of hauling sand from a private pit ("the Fluker pit"), which was located on property

leased by Industrial Aggregates of the Florida Parishes, L.L.C. ("Industrial Aggregates").

After filling the trailer with 27 tons of sand, Bobby Jenkins proceeded westward on a road neither owned nor leased by Industrial Aggregates and attempted to cross the railroad crossing DOT #930094V ("the Crossing") while en route to U.S. Highway 51.[1] While approaching the Crossing, Jenkins ignored the stop sign and crossbucks and did not slow down. When he attempted to drive across, the truck driven by Jenkins collided with southbound Amtrak Train #59. Bobby Jenkins perished from injuries sustained in the crash.

On September 26, 2019, Progressive, which insured Bobby Jenkins's truck, filed a declaratory action. On October 10, 2019, Bobby Jenkins's widow, Katy Jenkins, filed suit in the 21st District Court for Tangipahoa Parish. On February 4, 2020, the case was removed to this Court and subsequently transferred to the undersigned on February 5, 2020, to be consolidated with four related cases. The other plaintiffs in this matter are Nagra and Kimberly Hershey ("Hershey"), employees of Amtrak who were on the train at the time of the collision, and Derek Lagarde ("Lagarde"), a passenger on the Amtrak train. Among the named defendants were Heck, which Plaintiffs allege was Bobby Jenkins's employer, and Gray, which insured Heck. Gray's coverage of Heck also includes coverage for employees of Heck and those who operate an automobile that is owned, hired, or borrowed by Heck.

---

[1] There appears to be a great deal of confusion among the parties regarding the correct DOT number for the Crossing; however, whether or not this is the correct DOT number is irrelevant to the substance of this order.

On December 29, 2020, Gray filed the present motion for summary judgment, arguing that this accident was not covered under their policy because Bobby Jenkins was not an employee of Heck and was not operating an automobile that is owned, hired, or borrowed by Heck. The Opponents did not argue that Bobby Jenkins was operating an automobile that is owned, hired, or borrowed by Heck. Thus, the only issue before the Court is whether Bobby Jenkins was an employee of Heck at the time of the accident.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Int'l *Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

As stated above, the only issue before the Court is whether Bobby Jenkins was an employee of Heck. When a party seeks to establish an employer-employee relationship, the ultimate burden of proof is on the party that alleges the existence of the employment relationship. *Hillman v. Comm-Care, Inc.*, 2001-1140 (La. 1/15/02), 805 So. 2d 1157, 1163. Whether a worker is properly classified as an employee or an

independent contractor is a factual question that must be resolved on a case-by-case basis. *Tower Credit, Inc. v. Carpenter*, 2001-2875 (La. 9/4/02), 825 So. 2d 1125, 1129. However, when there is no material dispute regarding the facts underlying whether a litigant was an employee or independent contractor, the court may determine the litigant's employment status as a matter of law. *See Khalaf v. Mass Res., Inc.*, 2019-6 (La. App. 3 Cir. 10/2/19), 280 So. 3d 975, 979; *Perkins v. Gregory Mfg. Co.*, 95-01396 (La. App. 3 Cir. 3/20/96), 671 So. 2d 1036, 1041.

Louisiana courts utilize the "control test" to determine a worker's employment status, which requires courts to inspect the degree of control over the work reserved by the principal. *Hickman v. S. Pac. Transp. Co.*, 262 So. 2d 385, 391 (1972). Importantly, this test does not require that significant supervision and control were actually exercised, but instead, whether, "from the nature of the relationship, the right to do so exists." *Id.* When analyzing the employment relationship, Louisiana courts consider whether:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Tower Credit, Inc.*, 825 So. 2d at 1129.

In this case, several of these factors, supported by undisputed facts, weigh in favor of Gray's argument that Bobby Jenkins was an independent contractor. Heck

5

did not have a written contract with Bobby Jenkins; however, there is no requirement that the agreement between a principal and an independent contractor be in writing. (Rec. Doc. 246-5, at p. 36); *Tate v. Progressive Sec. Ins. Co.*, 2008-0950 (La. App. 4 Cir. 1/28/09), 4 So. 3d 915, 920. There was an agreement between Heck and Bobby Jenkins that "[he] would haul product from whatever facility [he] picked it up to whatever plant and [he] would be paid this amount of money." (Rec. Doc. 246-5, at p. 10). Thus, the Court finds that there was a contractual or, at the very least, quasi-contractual relationship between Heck and Bobby Jenkins.

Additionally, the agreement between Heck and Bobby Jenkins allowed him to complete the work according to his own methods. Although the Opponents argue that Bobby Jenkins was sometimes required to wear protective equipment, such requirements do not preclude the Court from finding that he was an independent contractor. *See Perkins*, 671 So. 2d 1036, 1041. Indeed, holding otherwise would be contrary to public policy because principals should be concerned with the safety of both employees and independent contractors, regardless of whether or not they could be held liable for any injuries that may befall them.

Further, Bobby Jenkins was paid for each delivery in the amount of the going "freight rate," which depended on the price of gasoline and the amount of material hauled. (Rec. Doc. 246-5, at p. 10). An agreement whereby a worker is hired each day to perform a specific assignment for an agreed upon price is indicative of an independent contractor relationship. *Chaisson v. Louisiana Rock Monsters*, LLC, 2013-1423 (La. App. 4 Cir. 4/2/14), 140 So. 3d 55, 58.

Heck and Bobby Jenkins were free to terminate their relationship at any time without notice or penalty, which is indicative of an at-will employment relationship. (Rec. Doc. 246-5, at p. 36). Notably, however, Bobby Jenkins was not required to inform Heck if he was unable to make deliveries and was not expected to begin working at any particular time. (Rec. Doc. 246-5, at pp. 34-35). Further, although he would not be paid if he did not make deliveries, Bobby Jenkins's working relationship with Heck would not be terminated if he did not make deliveries. (Rec. Doc. 246-5, at pp. 34-35). Since this type of flexibility is not typically afforded to an employee, this termination factor cuts in favor of Gray's argument that Bobby Jenkins was an independent contractor. *See Tate*, 4 So. 3d at 922.

On the other hand, the Opponents' primary argument is that Heck required Bobby Jenkins to call a phone number each night in order to get instructions on where to pick up and deliver loads, which reduced the independent nature of the work. A similar situation was addressed in *Tate*, where the Third Circuit Court of Appeal held that an independent contractor's independence is not destroyed by the fact that his principal tells him where to deliver loads. *Id.* at 921. Implicit in this decision is the understanding that independent contractors require some degree of communication with the principal in order to provide their services. However, unlike in *Tate*, Bobby Jenkins also received instructions from Heck regarding where to pick up loads. This decreased Bobby Jenkins' discretion in choosing the routes between deliveries, which tends to show that Heck exercised a somewhat greater degree of control over Bobby

7

Jenkins than the employment situation in *Tate*. *See Pilet v. Pilet Distributors*, 2020-0319 (La. App. 4 Cir. 12/30/20), 2020 WL 8455695, at *5.

On balance, the Court finds that Bobby Jenkins's relationship with Heck was more analogous to a principal-independent contractor relationship. This finding is supported by the undisputed facts outlined above and by some facts that do not fall squarely within the five factors discussed above. For example, Heck did not withhold taxes from payments made to Bobby Jenkins and sent him a 1099 form at the end of each year. (Rec. Doc. 246-5, at p. 35). Additionally, Bobby Jenkins, through BJ Trucking, owned, maintained, and insured his own truck and did not receive employee benefits. (Rec. Doc. 246-5, at p. 35). Finally, and perhaps most persuasively, the fact that Bobby Jenkins created BJ Trucking Earthmover LLC has been held to be the "kind of entrepreneurial conduct [that] strongly suggests an independent contractor relationship." *Clay v. New Tech Global Ventures, LLC*, No. 16-296, 2019 WL 1028532 (W.D. La. Mar. 4, 2019) (quoting *Spellman v. Am. Eagle Exp., Inc.*, No. 10-1764, 2013 WL 1010444, at *4 (E.D. Pa. Mar. 13, 2013).

For the above reasons, the Court finds that Bobby Jenkins was not an employee of Heck, and therefore, Gray's insurance policy does not provide coverage for this accident.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 246)** filed by Gray Insurance Company is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Gray Insurance Company in the above-captioned matters are hereby **DISMISSED with prejudice**.

New Orleans, Louisiana, this 23rd day of February, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE